UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

|  |  |  |
|---|---|---|
| | : | |
| **EVENFLO COMPANY, INC.,** | : | **CASE NO. 3:14-cv-00076** |
| | : | |
| *Plaintiff,* | : | **JUDGE THOMAS M. ROSE** |
| | : | |
| **v.** | : | |
| | : | |
| **MARK DANIEL AUGUSTINE,** | : | |
| | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

---

### ENTRY AND ORDER DENYING DEFENDANT MARK DANIEL AUTUSTINE'S MOTION TO DISMISS AND GRANTING DEFENDANT MARK DANIEL AUGUSTINE'S MOTION TO TRANSFER VENUE, DOC. 5.

---

Pending before the Court for decision is Defendant Mark Daniel Augustine's (Augustine) Motion to Dismiss, Doc. 5. Therein, Augustine asserts: Plaintiff Evenflo Company, Inc.'s (Evenflo) Complaint should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) because Ohio's long arm statute does not reach Augustine, the current forum will deprive him of his right to due process, and a forum selection clause in the Covenant he signed does not apply. Doc. 5 at 1, 6-8. Also, Augustine believes that venue in Ohio is improper pursuant to Federal Rule of Civil Procedure 12(b)(3), because the alleged wrongs took place in Mexico, making Mexico the appropriate forum. *Id.* at 1, 16. Further, Augustine states that Evenflo's Complaint should be dismissed under the doctrine of forum non conveniens since an alternate forum is available, and both private and public interest factors favor dismissal.

*Id.* at 1, 11-15. Lastly, Augustine believes that if Evenflo's Complaint is not dismissed, the Court should transfer venue to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1404(a). *Id.*

Evenflo alleges that venue is proper in the United States District Court for the Southern District of Ohio and also that the Court has jurisdiction over Augustine. Doc. 1 ¶¶ 3-4. Further, Evenflo believes venue is also proper because Defendant executed a Not to Compete and Maintain Confidentially Covenant which contained a forum-selection clause specifying that any disputes involving the Covenant would be resolve in Ohio courts under Ohio law. *Id.* at ¶ 6. The Court finds that personal jurisdiction exists in this case and venue is proper in this Court. Further, Augustine has not established that Mexico is an adequate alternative forum for all of the present causes of action. However, for the convenience of the parties and witnesses as well as for the interest of justice, this Court finds that the case should be transferred to the United States District Court for the Southern District of California.

**I. Relevant Jurisdictional Factual Background**

Per the Complaint, around June 17, 2003, Augustine became employed by Evenflo with the primary duty of operating Evenflo's plant located in Tijuana, Mexico (Tijuana Plant). Doc. 1 ¶ 5. As a requirement of his employment, Augustine signed a Covenant Not to Compete and Maintain Confidentiality (Covenant) which stated that any disputes relating to the Covenant would be resolved in Ohio under Ohio law. *Id.* at ¶ 6. Even though Augustine worked solely in Mexico he remained in contact with supervisors in Ohio, received his paychecks from Evenflo in Ohio, and used a corporate credit card that was billed to Evenflo in Ohio. *Id.* at ¶ 7. Augustine would also make periodic trips to Ohio to meet with and report to his supervisors about the status

of the Tijuana Plant. *Id.* Around January 17, 2014, Augustine resigned from his position at Evenflo. *Id.* at ¶ 8.

During his employment, Evenflo claims that Augustine used company funds to pay his Employment Tax in Mexico and that Augustine sold scrap metal owned by Evenflo for his own personal benefit. *Id.* at ¶¶ 11, 14.

Augustine also was allegedly associated with a $1.8 million fine Evenflo received from Mexican tax authorities because mandated accounting software was not implemented at the Tijuana Plant. *Id.* at ¶¶ 15, 18. Following the fine, Augustine hired a Mexican Law Firm to represent Evenflo in relation to the fine, subjecting Evenflo to $248,000 in legal fees. *Id.* at ¶¶ 19, 22. Augustine supposedly never notified his superiors about the fine or the firm he hired, and hid the payout of legal expenses by coding the payments as maintenance expenses, paying them out of a building maintenance account. *Id.* at ¶ 19, 21. Also, Evenflo believes that Augustine is responsible for accumulated interest on the fine, bringing the fine and interest to a total of $2.1 million. *Id.* at ¶ 23. Additionally, Evenflo states that Augustine is responsible for paying the senior manager at the Tijuana Plant two months past his resignation date. *Id.* at ¶ 24-25. Finally, Augustine had to complete an Ethics Questionnaire and Business Policy/Conflicts of Interest Compliance Certification (the Ethics Questionnaire) each year, which verified that he was not involved or aware of any conduct that would compromise Evenflo. *Id.* at ¶ 12.

On March 7, 2014, Evenflo filed a complaint alleging four claims: breach of contract, conversion and civil theft, breach of duty of good faith and loyalty, and fraud. *Id.* at ¶ 6-10. Subsequently, on April 10, 2014, Augustine filed a motion to dismiss for lack of personal jurisdiction and/or forum non conveniens. Doc. 5 at 1. Then, on May 5, 2014, Evenflo filed a memorandum in opposition to Augustine's motion to dismiss. Doc. 6 at 1. Finally, on May 20,

2014, Augustine filed a reply brief in support of his motion to dismiss. Doc. 7 at 1. Currently the motion to dismiss is ripe for decision.

## II. Jurisdiction

Evenflo asserts in its Complaint that the Court has diversity jurisdiction over this present case pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

## III. Standard of Review

Augustine seeks dismissal of Evenflo's claims under Federal Rules of Civil Procedure 12(b)(2),(3). The reason to file a motion under Federal Rule of Civil Procedure 12(b)(2) is to challenge the court's personal jurisdiction of a case. In order to survive a motion to dismiss for lack of personal jurisdiction, "the plaintiff need only make a 'prima facie' case that the court has personal jurisdiction." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n.3 (6th Cir. 2006)).  When an evidentiary hearing is held, the plaintiff must establish "'specific facts' that personal jurisdiction exists over a non-resident defendant, and the plaintiff must make this demonstration by a preponderance of the evidence." *Conn*, 667 F.3d at 711 (citing *Kroger*, 437 F.3d at 510). A Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue will only be granted if the action was not filed in a proper venue pursuant to 28 U.S.C. § 1391. *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 536 (6th Cir. 2002).

## IV.  Analysis

### 1.  Personal Jurisdiction

Augustine asserts that Evenflo's Complaint must be dismissed because this Court does not have personal jurisdiction over him. Doc. 5 at 3.

4

"In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). The Sixth Circuit recognizes that there are two types of personal jurisdiction, general and specific. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). Ohio does not acknowledge general jurisdiction of parties who are non-residents of Ohio. *Signom v. Schenck Fuels Inc.*, No. C-3-07-037, 2007 U.S. Dist. LEXIS 42941, 2007 WL 1726492 at *3 (S.D. Ohio June 13, 2007). Therefore, a personal jurisdiction analysis of Augustine as a non-resident can only be based on specific jurisdiction determined by Ohio law. *Id.* "Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn*, 667 F.3d at 712.

### a. Ohio's Long Arm Statute

"Unlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Conn*, 667 F.3d at 712. "Ohio's long-arm statute grants Ohio courts personal jurisdiction over a non-resident if his conduct falls within the nine bases for jurisdiction listed by the statute." *Id.* Also, when jurisdiction is based solely upon Ohio's Long Arm Statute, only a cause of action arising from acts in the statute may be asserted against a defendant. Ohio Rev. Code Ann. § 2307.382(C). Ohio's long-arm statute states that:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person:
>
> > (1) Transacting any business in this state;

(4) Causing tortious injury in this state by an act or omission outside the state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(B) For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state. As used in this division, "principal" and "sales representative" have the same meanings as in section 1335.11 of the Revised Code.

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Ohio Rev. Code Ann. § 2307.382. Evenflo asserts that this Court has personal jurisdiction over

Augustine pursuant to sections (A)(1), (A)(4), and (A)(6).

**Ohio Revised Code § 2307.382(A)(1)**

This court has personal jurisdiction under section (A)(1) when an action arises from a

defendant or a defendant's agent transacting any business in Ohio. The Supreme Court of Ohio

has concluded that section (A)(1) is "very broadly worded and permit[s] jurisdiction over

nonresident defendants who are transacting any business in Ohio." *Ky. Oaks Mall Co. v.

Mitchell's Formal Wear*, 559 N.E.2d 477, 480 (Ohio 1990). The Ohio Supreme Court has found

that the word "transact" means "to carry on business," as well as "to have dealings," and the

word is farther reaching than the term "contract." *Shaker Construction Group, LLC v. Schilling*,

2008 U.S. Dist. LEXIS 79645, 2008 WL 4346777, *3 (S.D. Ohio Sept. 18, 2008)). The best

approach is to simply apply the language of section(A)(1) and the court must utilize a case-by-

case determination. *Genesis Insurance Co. v. Alfi*, 425 F.Supp. 2d 876, 894 (S.D. Ohio 2006). To

establish jurisdiction, ongoing substantive contacts must exist, the existence of a contract or

simply soliciting business in Ohio is not enough. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. Appx. 425, 431-32 (6th Cir. 2006).

Two factors are also relevant to determine if a non-resident defendant "transacted business" in Ohio within the scope of Ohio's long arm statute. *Shaker Construction*, 2008 U.S. Dist. LEXIS 79645, 2008 WL 4346777 at *3. The first factor is whether the non-resident defendant is the one initiated the business contacts. *Id.* (citing *Paglioni & Assocs. v. WinnerComm, Inc.*, No. 2:06-cv-276, 2007 U.S. Dist. LEXIS 18612, 2007 WL 852055 at *9 (S.D. Ohio March 16, 2007). If the non-resident defendant is the one who reached out to create a business relationship, then the defendant transacted business in Ohio. *Id.*

The second factor that must be taken into consideration is if the parties undertook business negotiations in Ohio or if the terms of the discussions affect Ohio. *Shaker Construction*, 2008 U.S. Dist. LEXIS 79645, 2008 WL 4346777 at *3. If discussions took place in Ohio or the terms affect Ohio, then this is sufficient to amount to the non-resident defendant "transacting business" in Ohio. *Id.* However, directly communicating with an Ohio resident to create a business agreement is not enough, "there must additionally be some continuing obligation that connects the nonresident defendant to the state or some terms of the agreement that affect the state." *Id.* (citing *Kentucky Oaks Mall*, 559 N.E.2d at 480).

In *Coast to Coast Health Care Services, Inc. v. Meyerhoffer*, a prima facie case of personal jurisdiction existed over a non-resident employee under sections (A)(1) and (A)(4). No. 2:10-cv-734, 2012 U.S. Dist. LEXIS 6250, 2012 WL 169963 at *1 (S.D. Ohio Jan. 19, 2012). This is because the plaintiff's principal place of business was in Ohio, the defendant's employment contract was discussed over the phone with plaintiff in Ohio, plaintiff gave defendant "software, programing, and other tools" necessary "to carry out her employment," defendant was

7

compensated for her work by plaintiff located in Ohio, and she communicated regularly with her supervisor located in Ohio. *Id.* Personal jurisdiction also existed when an employee located in a different state took advantage of an employment relationship with a company in Ohio, reported expenses weekly, performance reports, regularly contacted the Ohio company via email and telephone, and transferred money. *Rexam Healthcare Packaging, Inc. v. Osiris Medical, Inc.*, No. 3:09-cv-1584, 2010 U.S. Dist. LEXIS 21702, 2010 WL 819063 at *2 (N.D. Ohio Mar. 9, 2010).

Augustine's first contact with Evenflo began in 2003 after gaining employment at the Ohio company. Augustine knew that Evenflo was located in Ohio and he was working for an Ohio company even though he was responsible for the operations of the Tijuana Plant in Mexico. On an ongoing basis, Augustine communicated with his supervisors and other individuals located in Ohio. He admits that he traveled to Ohio on several occasions to meet with Evenflo executives and sign relevant documents. Even though Augustine worked in Mexico, he reported to Evenflo in Ohio. Also, his compensation was administered from Ohio and his company credit card was billed to Ohio. Due to these connection, section (A)(1) confers personal jurisdiction over Augustine.

**Ohio Revised Code § 2307.382(A)(4)**

Under section (A)(4), personal jurisdiction exists over a defendant that allegedly caused tortious injury in Ohio by an act or omission outside of Ohio if the defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Ohio.

In *The Rightthing, LLC v. Brown*, the plaintiff was a company with its principal place of business in Ohio, and filed suit against a previous employee who at all relevant times resided in

8

California. 2009 U.S. Dist. LEXIS 7464, 2009 WL 249694, *1 (N.D. Ohio 2009). The court found personal jurisdiction existed under section (A)(4) when an employee accessed the company's computer system in Ohio, allegedly causing tortious injury to the company, the employee was compensated from his employer in Ohio, and he received "reports, proposals and agreements" straight from company headquarters in Ohio. *Id.* at *4.

In this case, Evenflo, with its principal place of business in Ohio, alleges that they suffered tortious injuries in the form of conversion and civil theft from the conduct of Augustine who was located outside of Ohio.  Augustine did not collect substantial revenue from activities in Ohio so the question is whether or not the alleged tortious conduct caused an injury in Ohio and if it did, whether Augustine conducts regular business or engages in any other persistent course of conduct in Ohio. First, the alleged conversion and civil theft outside of Ohio does harm Evenflo who is located in Ohio. This is because a financial loss in Mexico would have a direct impact on the Ohio based company. Damages resulting from stolen scrap metal, and company funds paid to cover an employee's taxes will surely impact Evenflo, headquartered in Ohio. Second, Augustine did not personally receive revenue from goods sold or services rendered in Ohio or conduct regular business in Ohio. However, Augustine did receive his paychecks from Ohio, he communicated with supervisors in Ohio, his company credit card bills were sent to Evenflo in Ohio, and he visited Ohio to meet with company employees on several occasions. The regular contacts by Augustine, outside of Ohio, with Evenflo, located in Ohio, amounts to engagement in a persistent course of conduct in Ohio. *See International*, 2012 U.S. Dist. LEXIS 73228, 2012 WL 1902557 at *5; *Rightthing*, 2009 U.S. Dist. LEXIS 7464, 2009 WL 249694 at *4. Due to the tortious injury caused to Evenflo in Ohio and the persistent course of conduct by Augustine, section (A)(4) also confers personal jurisdiction over Augustine.

9

**Ohio Revised Code § 2307.382(A)(6)**

Section (A)(6) confers personal jurisdiction over a person that caused tortious injury in Ohio by an act committed outside of Ohio with the objective of injuring individuals and the person committing the act could have reasonably expected that some individual would be injured in Ohio.

Courts have found that personal jurisdiction exists in a range of cases involving section (A)(6). For example, section (A)(6) created personal jurisdiction over a non-resident defendant where alleged acts of theft and conversion of a catalogue and customer list transpired when the defendant was outside of Ohio and a contract between the parties was created in Ohio. *Innovative Digital Equipment, Inc. v. Quantum Technology, Inc.*, 597 F.Supp. 983, 987 (N.D. Ohio 1984). Another situation where personal jurisdiction was found over a defendant under section (A)(6) was where an out of state defendant allegedly committed conversion, fraud, and civil conspiracy from a location other than Ohio, with knowledge that the stock at issue was of and affected the Ohio corporation. *Herbruck v. LaJolla Capital*, No. 19586, 2000 Ohio App. LEXIS 4668, 2000 WL 1420282 at * 3 (Ohio Ct. App. Sept. 27, 2000). In both of these situations, section (A)(6) conferred personal jurisdiction because the actions involved property in Ohio and the tortious conduct was felt in Ohio.

As discussed in the analysis of section (A)(4) above, the alleged acts of conversion and civil theft outside of Ohio, if true, have injured Evenflo in Ohio. The only other issue is whether Augustine might reasonably have expected Evenflo to be damaged in Ohio from his tortious acts. Augustine, as an agent of Evenflo, had access to company funds to be used for authorized purposes. Augustine told Evenflo's accounting personnel to pay his personal employment tax out of company funds. Further, he even had the payments disguised to conceal the true nature of the

payments. This demonstrates that Augustine could reasonably expect that the unauthorized payments would cause injury to Evenflo. He also knew that Evenflo sold left over scrap metal to recover some of the cost involved with manufacturing. If Augustine took scrap material from the company for his own personal benefit, this means that the company could not sell the scrap and receive any revenue. Thus, Augustine could reasonably expect that selling scrap metal belonging to Evenflo would cause direct injury to Evenflo. Due to the tortious injury caused to Evenflo in Ohio and the reasonable expectation that the tortious injury would occur, section (A)(6) confers personal jurisdiction over Augustine.

### b.  Right to Due Process

"[D]ue process requires only that in order to subject a defendant to a judgment . . . if he be not present within territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940).

Consistent with due process, the Sixth Circuit has established a three-part test for determining whether personal jurisdiction may be exercised:

- **First**, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.

- **Second**, the cause of action must arise from the defendant's activities there.

- **Finally**, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Third Nat'l Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1090 (6th Cir. 1989) (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

For the first prong of the test, Ohio's Long-Arm Statute's "transacting any business" standard is the same as the "purposeful availment" prong of the constitutional standard. *Burnshire*, 198 F. App'x at 432. Next, the second prong's "arising from" standard only requires a substantial connection between the cause of action and the defendant's association with Ohio. *Genesis*, 425 F. Supp. 2d at 893. Thus, the cause of action does not have to directly or formally exist from defendant's connections with Ohio, there just needs to be some sort of substantial connection. *International Paper*, 2012 U.S. Dist. LEXIS 73228, 2012 WL 1902557 at *6 (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). Finally, the third prong is typically met when the first two prongs of the Due Process analysis are met, "an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *Genesis*, 425 F.Supp.2d at 893  (citing *First National Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982)).

In this case, the first prong of the test is satisfied. As determined above, Augustine is alleged to have engaged in a persistent course of conduct in Ohio purportedly creating an impact in Ohio. Therefore, exercising personal jurisdiction over Augustine is justified under the "purposeful availment" prong of the constitutional analysis. As for the second prong, Augustine may have resided outside of Ohio, but he would have been unable to convert company funds or sell scrap metal for his own use if he was not employed by Evenflo, headquartered in Ohio. The operative facts of Evenflo's causes of action directly relate to Augustine's employment with Evenflo. Augustine's allegedly tortious activities and breach of obligations to Evenflo create a substantial connection to Ohio. Finally, the third prong is concerned with the reasonableness of

12

exercising personal jurisdiction over Augustine. While witnesses may be located in Mexico, bringing non-residents to Ohio must be balanced with Ohio's interest in protecting companies that conduct business in Ohio. Evenflo has an interest in obtaining a convenient and immediate relief after filing suit in Ohio. Under the circumstances, it is reasonable for personal jurisdiction to exist over Augustine in Ohio and it does not offend the Due Process Clause.

### C.      Forum Selection Clause

Evenflo believes that this Court has personal jurisdiction over Augustine because of a forum selection clause included in a non-compete agreement that was signed by Augustine. Doc. 1 at ¶ 4.

The Court will follow the rationale in *Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.* and find that "Ohio law should apply to the interpretation of this forum selection clause." 489 F.3d 303, 308 (6th Cir. 2007). Further, Ohio law will be applied because it is the law of the jurisdiction agreed upon by the parties in the Covenant. Doc. 1-1; *Bracken v. Dasco Home Med. Equip., Inc.*, 2013 U.S. Dist. LEXIS 90628, 17 (S.D. Ohio June 27, 2013); see also *Enquip Techs. Group Inc. v. Tycon Technoglass S.R.I.*, 2012 986 N.E.2d 469, 479 (Ohio App. 2012). "The goal of contract interpretation is to ascertain and effectuate the parties' intent." Bracken 2013 U.S. Dist. LEXIS 90628 at 18 (citing *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)). To determine the intentions of the parties, the four corners of the contract must be construed as whole to determine if any ambiguity exists. *Graham*, 667 N.E.2d at 952. "A term [or phrase] that would otherwise cause ambiguity can be construed in the context of other terms in the contract to resolve the ambiguity." 18 Ohio Jurisprudence 3d, Contracts, Section 123 (2012) (citing *Seringetti Const. Co. v. City of Cincinnati*, 51 Ohio App. 3d 1, 553 N.E.2d 1371 (Ohio App. 1988)).

The relevant sections of the Covenant and the forum selection clause state:

PURPOSE
The intent and purpose of this Covenant is to protect the trade secrets, proprietary technical information and customer information of Evenflo Company, Inc. . . . from its competitors already in the business of designing, manufacturing and/or marketing juvenile products and those firms who desire to enter this business.

COVENANT
. . . Employee covenants that he/she will not directly or indirectly engage in any business endeavors or act as a consultant, representative or serve in the employ of any entity that is in competition with Evenflo in any market in which it participates. . . .

BREACH OF COVENANT
. . . Employee consents to an injunction enjoining any breach of this Covenant without limiting any other remedy, and agrees that any disputes relating to this Covenant shall be resolved in the courts of Ohio and pursuant to Ohio law.

Doc. 1-1. Evenflo argues that Augustine breached this Covenant by allegedly selling scrap metal owned by Evenflo for his own personal benefit. This was supposedly completed in competition with Evenflo in the scrap metal market. However, the Covenant only mentions "protecting trade secrets, proprietary technical information and customer information." Selling scrap metal does not fall under any of those categories. Further, the Covenant has conflicting language by first mentioning protection from those businesses that already are "marketing juvenile products" or desire to enter the market and later stating "any market." When reading the Covenant in the context of the non-compete agreement, the Court believes that the Covenant was created to address the specific disputes that could arise from an employee competing in the market where Evenflo dispenses its product, not from the scrap metal market where manufacturing by-products are disposed of. Scrap metal in the capacity that Evenflo acquires it, is a secondary effect from manufacturing and not one of the staple products that Evenflo competitively markets. The scrap metal argument presented by Evenflo exceeds the scope of the Covenant and is not founded in the purpose of the Non-Compete Agreement.

14

Since the forum selection clause in the Non-Compete Agreement only applies to the specific breaches mentioned in the agreement, this Court finds that the forum selection clause does not bind Augustine to the courts of Ohio or Ohio law.

### 2. Forum Non Conveniens

Even if this Court properly has jurisdiction over the present case, Augustine believes that this court should decline to accept jurisdiction over this action based on the common law doctrine of forum non conveniens. Doc. 5 at 10.

Under the doctrine of forum non conveniens, "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (U.S. 1981) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). Even if jurisdiction and venue are properly established, a court still has the discretion to dismiss an action on the grounds of forum non conveniens. *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994). When applying the doctrine of forum non conveniens an alternate forum must first be established, then the court must weigh the relevant private and public factors to determine if forum non conveniens justifies dismissal of the case.

### a. Adequate Alternative Forum

To dismiss a case for forum non conveniens, a defendant must first demonstrate that an adequate alternative forum exists and is available to resolve the dispute. *Piper*, 454 U.S. at 255. An alternate forum meets the above requirements "when the defendant is 'amenable to process' in the other jurisdiction" and the remedy offered is satisfactory, meaning that the alternate forum

"permit[s] litigation of the subject matter of the dispute." *Piper*, 454 U.S. at 255 n.22 (quoting *Gulf Oil Corp v. Gilbert*, 330 U.S. 506-07 (1947)).  "A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the benefits of an American court." *DTEX, LLC v. BBVA Bancomer, S.A..*, 508 F.3d 785, 796 (5th Cir. 2007). Defendants can meet their burden of establishing an adequate forum by offering support, such as affidavits from experts, to demonstrate analogous causes of action and adequate remedies in the alternative forum. *Stalinski v. Bakoczy*, 41 F. Supp. 2d 755, 759 (S.D. Ohio 1998); see also *Rustal Trading US, Inc. v. Makki*, 17 Fed. Appx. 331, 336 (6th Cir. 2001) (defendant submitted affidavits establishing the law of the alternate forum recognized the plaintiff's causes of action).

Augustine asserts that Mexico is an adequate alternative forum, the Court disagrees. There are no affidavits or evidence by experts demonstrating that Mexico is an adequate forum in this case for the present causes of action. Augustine cited to several non-binding Fifth Circuit cases, where under the specifics facts, the Fifth Circuit found Mexico was an adequate alternative forum. In this case, Augustine has not established that if this case was brought in Mexico, adequate substantive law, procedural law, and damages would be available under the Evenflo's causes of action. Just because the acts took place in Mexico does not in and of itself make Mexico an adequate alternative forum. Evenflo has decided to file its case in Ohio and without Augustine demonstrating the adequacy of Mexico as an alternate forum the Court is unable to conclude that Mexico is an adequate alternative forum under the present causes of action.

Since the alternative forum suggested by Augustine is not adequate, the Court does not need to balance the private and public factors. This case will not be dismissed under forum non conveniens.

### 3. Improper Venue

Defendant asserts this case should be dismissed because venue in this Court is improper and that the proper forum for this action is Mexico. Doc. 5 at 16.

Under 28 U.S.C. § 1391 (b)(2), venue exists in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated."

As discussed in the personal jurisdiction section above, substantial connections between Augustine and Ohio exist to warrant venue. Also, the consequences of Augustine's alleged actions can be traced back to Ohio and felt financially in Ohio. Venue is proper in the Southern District of Ohio.

### 4. Transfer Venue to California

Should this Court determine that it may exercise personal jurisdiction over Augustine, which it has, Augustine urges that this Court transfer venue of this action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1404(a). Doc. 5 at 16.

As Augustine points out, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Venue is proper in the district where the defendant resides when the case is a diversity action. 28 U.S.C. § 1391(a)(1).

When the parties are almost equally divided the court cannot shift the inconvenience to the plaintiff. *Candela Mgmt. Group v. Taco Maker, Inc.*, 2009 U.S. Dist. LEXIS 90152, 19, 2009 UL 2983074 (S.D. Ohio Sept. 11, 2009). *See, e.g., Van Dusen v. Barrack*, 376 U.S. 612, 645-646 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient."); *Copeland Corp. v. Choice Fabricators, Inc.*, 492 F. Supp. 2d 783, 789 (S.D. Ohio 2005) ("It is axiomatic that a motion under § 1404(a) cannot be used to transfer the inconvenience of litigating in a distant court from the defendant to the plaintiff."). Unless the balance is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.,* 330 U.S. at 508.

First, Augustine admits that he is subject to personal jurisdiction in the United States District Court for the Southern District of California and venue would lie there. Evenflo does not dispute personal jurisdiction in the United States District Court for the Southern District of California but Evenflo does challenge whether this district is reasonable. Therefore, this action could have been brought in the United States District Court for the Southern District of California.

Second, since personal jurisdiction and venue are satisfied, the issue becomes whether transfer is justified for the convenience of the parties, witnesses, and in the interest of justice. As for convenience of the parties, Augustine is located in California and argues that Spanish speaking witnesses and documents, most of which are located in Mexico, are closer to California making travel and expense of litigation less. Augustine mentions that Mexican law issues will be involved, requiring the testimony of a Mexican law expert, presumable from Mexico, making travel and expense even greater. Also, Augustine believes that since Evenflo already does

18

business in Southern California and Mexico it is reasonable that this matter be transferred to California.

This Court believes that with all of the difficulties in obtaining witnesses and documents that are located in Mexico it is appropriate to transfer this case to the Southern District of California. Augustine has identified multiple crucial witnesses to this case, all of which reside in Mexico and the trouble that would entail trying to compel these witnesses to present themselves in Ohio. Doc. 5-1 at ¶ 25. Additionally, the majority of the documents and events occurred in Mexico making California a more convenient forum for the parties and witnesses because of how close the information is to California. Since Evenflo already operates a plant in Mexico and conducts business in California, the Court finds it reasonable that Evenflo pursue the remainder of its case in California.

Concerning the interest of justice, Evenflo will still have the same rights in California as in Ohio. Also, the Southern District of California had less civil cases per judge on its docket in the past 12-month period (2013) with 271 as compared to 333 per judge in the Southern District of Ohio.[1] Also, in the same timeframe the average time it took from filing to disposition of a civil case in the Southern District of California was 6.6 months as compared to 9.8 months in the Southern District of Ohio.[2] The interests of justice weigh in favor of California acquiring jurisdiction.

---

[1] California Southern U.S. District Court – Judicial Caseload Profile, June 17, 2014, http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-december-2013.pdf&page=69; Ohio Southern U.S. District Court – Judicial Caseload Profile, June 17, 2014, http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-december-2013.pdf&page=43.
[2] California Southern U.S. District Court – Judicial Caseload Profile, June 17, 2014, http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-december-2013.pdf&page=69; Ohio Southern U.S. District Court – Judicial Caseload Profile, June 17, 2014,

Venue is proper in either this Court or the District Court for the Southern District of California. Further, for the convenience of the parties and witnesses and in the interest of justice it is proper to transfer this case to the Southern District of California. Therefore, Augustine's Motion to Transfer Venue is GRANTED.

## IV. Conclusion

This Court has personal jurisdiction over Augustine, venue is proper, and forum non conveniens does not warrant dismissal of Evenflo's Complaint. However, venue will be transferred to the United States District Court for the Southern District of California. Therefore, Augustine's Motion to Dismiss is **DENIED** with respect to the personal jurisdiction, forum non conveniens, and improper venue claims. Augustine's Motion to Transfer venue is **GRANTED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, July 3, 2014.[3]

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-december-2013.pdf&page=43.
[3] The Court acknowledges the valuable contribution of judicial extern Jacob Gebelle from the University of Dayton School of Law in the drafting of this order.